UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| v. | § CRIMINAL NO. 4:16-cr-3 |
| | § |
| Omar Faraj Saeed al Hardan, | § |
| Defendant. | § |

## PLEA AGREEMENT

The United States of America, by and through Kenneth Magidson, United States Attorney for the Southern District of Texas, and Ralph E. Imperato and S. Mark McIntyre, Assistant United States Attorneys, and the defendant, Omar Faraj Saeed al Hardan ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count One of the Indictment. Count One charges the Defendant with Attempting to Provide Material Support or Resources to a Designated Foreign Terrorist Organization, in violation of Title 18, United States Code, Section 2339B. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for the violation of Title 18, United States Code, Section 2339B, is imprisonment of not more than 20 years and a fine of not more than $250,000.00. Additionally, Defendant may receive a term of supervised release after imprisonment of up to life. *See* Title 18, United States Code, sections 3559(a)(3) and 3583(b)(2). Defendant acknowledges

and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, Sections 3559(a)(3) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

~~The Defendant agrees and admits that he is not a citizen of the United States and that he is removable from the United States pursuant to Title 8 U.S.C. Section 1227(a)(4)(B), and that it~~ is

2

~~the understanding and intention of the parties that at the conclusion of his sentence of incarceration in this case, the defendant will be removed from the United States.~~

### Waiver of Appeal and Collateral Review

5. Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

6. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005).

3

Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

7. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

## The United States' Agreements

8. The United States agrees to each of the following:

(a) If Defendant pleads guilty to Count One of the Indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the Indictment at the time of sentencing;

(b) If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

(c) The United States agrees not to recommend to the Court, at the time of sentencing, that the defendant be placed in a particular security level prison or in a specific geographic location. The defendant has been informed by his counsel and understands that the decisions as to both the appropriate security level in which he shall be incarcerated, as well as the location of his incarceration, are matters in the sole discretion of the Bureau of Prisons.

(d) The United States agrees not to seek a fine because the Defendant is indigent.

(e) The United States agrees to move to remit the special assessment because the Defendant is indigent.

4

### Agreement Binding - Southern District of Texas Only

9. The United States Attorney's Office for the Southern District of Texas agrees that it will not bring any additional criminal charges against the defendant for the conduct outlined in the factual basis or for any other criminal offenses committed by the defendant which are known to the United States at the time of disposition. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement to the attention of other prosecuting offices, if requested.

### United States' Non-Waiver of Appeal

10. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

   (a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

   (b) to set forth or dispute sentencing factors or facts material to sentencing;

   (c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

   (d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

   (e) to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

11. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless

acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offenses to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

12. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

> (a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

> (b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

> (c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

**Factual Basis for Guilty Plea**

13. Defendant is pleading guilty because he is in fact guilty of the charge contained in Count One of the Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, to which the defendant and the government stipulate and agree, among others, would be offered to establish Defendant's guilt:

(a.) On October 15, 2004, the United States Secretary of State designated al-Qa'ida in Iraq ("AQI"), then known as Jam'at al Tawhid wa'al-Jihad, as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act. On May 15, 2014, the Secretary of State amended the designation of AQI as an FTO under Section 219 of the Immigration and Nationality Act to add the alias Islamic State of Iraq and the Levant ("ISIL") as its primary name, and various aliases including the Islamic State of Iraq and al-Sham ("ISIS"). Thus, at all times relevant to this matter, ISIL has been a designated foreign terrorist organization.

(b.) Defendant Omar Faraj Saeed Al Hardan ("Al Hardan") is a 24 year-old born in Iraq, who entered the United States as a refugee on or about November 2, 2009. Prior to entering the United States, Al Hardan was in at least two refugee camps in Jordan and Iraq. After being admitted into the United States as refugee from Iraq, Al Hardan applied for and received Legal Permanent Resident Status on August 22, 2011. Shortly after his arrival in the United States, Al Hardan came to reside in Houston, Texas.

(c.) Special Agents with the Federal Bureau of Investigation (FBI) in Houston began investigating Al Hardan in April of 2014. Special Agents learned that Al Hardan was in contact with an individual (hereinafter Individual-1), who was residing in Sacramento, California. Al

7

Hardan and Individual-1 were communicating through electronic communications and had done so from in or about April 2013 through in or about October 2014.₁ Al Hardan understood and believed that Individual-1 was associated with the Al-Nusrah Front (ANF).₂ Individual-1 informed Al Hardan that he had previously traveled to Syria to fight for the ANF and discussed plans to return to Syria with Al Hardan to fight for the ANF. Al Hardan knew that the ANF had engaged in, and was engaging in, terrorist activities.

(d.) Al Hardan posted many statements on social media in support of ISIL. For example, on July 28, 2014, Al Hardan posted on Twitter, "[w]hen the heroes of the Islamic State attack their prey, they hurt and kill them precisely thanks to Allah's help and the strength he gives them." On August 12, 2014, Al Hardan posted a photo of a Humvee with an ISIL flag. Above the photo, Al Hardan posted, "ISIS yesterday in Iraq, today in Syria and Allah willing, tomorrow in Jerusalem."

(e.) Beginning in 2013 and continuing through 2014, Al Hardan purchased electronic circuitry components, such as transistors, battery connectors, light resistors and wireless remote controls on eBay. Those components are consistent with transmitter/receiver detonators that are used by terrorists to build improvised explosive devices.

(f.) In June of 2014, the FBI introduced a Confidential Human Source (CHS) to Al Hardan. The CHS developed a relationship with Al Hardan and the two met approximately seventeen (17) times. During covertly recorded meetings, the CHS and Al Hardan discussed traveling overseas to support ISIL in fighting jihad. Al Hardan knew that ISIL had engaged in,

---

1 Individual-1 was indicted in another district earlier this year and charged with a violation of Title 18, United States Code Section, 2339A. That charge is still pending.
2 ANF is also a designated FTO

and was engaging in, terrorist activities. On November 5, 2014, Al Hardan met with the CHS and took an oath of loyalty to ISIL. On that same day, Al Hardan said that he wanted weapons training with a fully automatic AK-47. On November 7, 2014, at a remote location outside of Houston, Al Hardan and the CHS participated in approximately one hour of tactical weapons training with an AK-47.

(g.) Throughout the remainder of 2014 and early 2015 during covertly recorded meetings, Al Hardan continued to discuss various ways to assist ISIL with the CHS. Specifically, Al Hardan told the CHS that he wanted to be trained in building remote transmitter/receiver detonators for improvised explosive devices. Al Hardan indicated that he wanted to learn to use cell phones as the remote detonators. On November 20, 2014, during a discussion about remote detonators, explosives, and ISIL, Al Hardan showed the CHS a circuit board he built to be used as a remote transmitter. Al Hardan and the CHS discussed remote transmitters and how he taught himself to construct the devices by accessing online training videos and other resources he found online. During other meetings, Al Hardan and the CHS had further discussions about building remote transmitters for the benefit of ISIL.

(h.) On August 18, 2014, Al Hardan completed an N-400 application for naturalization for United States citizenship. Question 10C on the N-400 specifically asked Al Hardan whether he associated, directly or indirectly, with a terrorist organization. Al Hardan checked the box, "No" when responding to this question. At the end of the N-400 application, Al Hardan signed the form certifying, under penalty of perjury under the laws of the United States of America, that all of his answers were true and correct. At the time, Al Hardan knew that his answer was false and understood that a truthful answer would have adversely affected his attempt to procure

naturalization and citizenship.

(i.)   From September of 2015 through December of 2015, Al Hardan continued to purchase electronic components to make circuitry and the necessary tools used to assemble the circuitry. Over this period of time, Al Hardan made numerous statements to his family members regarding his future plans. Specifically, Al Hardan stated to family members:

- "Once I get the passport,[3] I will leave America."
- "Just wait until I get the passport. You will get a phone call with news of my death. Just wait and see."
- "I will not stay in America. Once I get the passport, I will go to Syria."
- "I will go to Syria or Iraq."
- "I will travel to Syria once I get the passport…Iraq or Syria… I want to blow myself up."
- "I want to blow myself up. I want to travel with the Mujahidin. I want to travel to be with those who are against America. I am against America."

According to other family members and friends, Al Hardan continued to discuss his plans to travel to Syria and fight alongside ISIL and become a martyr.

(j.)   In January of 2016, FBI Special Agents executed a search warrant at the residence of Al Hardan. FBI Special Agents recovered CDs on electronic circuitry training, electronic circuitry components, tools used to build circuitry, multiple cell phones (that had not been activated), a prayer list for committing Jihad and becoming a martyr, and the ISIL flag. The FBI

---

[3] Al Hardan applied for naturalization on August 18, 2014, and understood and believed that, once naturalized, he would have been able to obtain a passport and travel overseas.

also obtained a search warrant for Al Hardan's computer. Through the search of Al Hardan's computer, the FBI was able to retrieve the search history and found that Al Hardan had accessed websites that provided training on electronic circuitry and instruction on how to make remote detonators.

## Breach of Plea Agreement

14. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, or commits or attempts to commit any additional federal, state or local crimes, or otherwise violates any provision of this agreement, then:

    a.    The United States will be released from its obligations under this agreement. The defendant, however, may not withdraw the guilty plea entered pursuant to this agreement;

    b.    The defendant will be subject to prosecution for any federal criminal violation that is not time-barred by the applicable statute of limitations on the date this agreement is signed. Notwithstanding the subsequent expiration of the statute of limitations, in any such prosecution, the defendant agrees to waive any statute-of-limitations defense; and

    c.    Any prosecution, including the prosecution that is the subject of this agreement, may be premised upon any information provided, or statements made (including the statement of facts in this agreement), by the defendant, and all such information, statements, and leads derived therefrom may be used against the defendant. The defendant waives any right to claim that statements made before or after the date of this agreement, including the statement of facts in this agreement or adopted by the defendant and any other statements made pursuant to this or any other agreement with the United States, should be excluded or suppressed under Fed. R. Evid. 410, Fed.

11

R. Crim. P. 11(f), the Sentencing Guidelines or any other provision of the Constitution or federal law.

### Restitution, Forfeiture, and Fines – Generally

15. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

16. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

17. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

18. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

### Fines

19. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

### Complete Agreement

20. This written plea agreement, consisting of 16 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

21. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on October 17, 2016.

_____
Omar Faraj Saeed al Hardan
Defendant

Subscribed and sworn to before me on October 17, 2016.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Kenneth Magidson
United States Attorney

By: _____
Ralph E. Imperato
S. Mark McIntyre
Assistant United States Attorney
Southern District of Texas

_____
David Adler
Attorney for Defendant

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. 4:16-cr-3 |
| Omar Faraj Saeed al Hardan, Defendant. | § § § | |

## PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending Indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____     10/17/16
David Adler                                     Date
Attorney for Defendant


I have consulted with my attorney and fully understand all my rights with respect to the Indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual

15

which may apply in my case.   I have read and carefully reviewed every part of this plea agreement with my attorney.   I understand this agreement and I voluntarily agree to its terms.

_____      \_\_\_10/17/16_____
Omar Faraj Saeed al Hardan          Date
Defendant